Good morning. Good morning, Your Honor. I'm Stacey Layton representing the City of Oakland. Along with me I have Barbara Parker sitting in the front row who is the Oakland City Attorney. I will be taking 10 minutes to cover the breach of contract issues and I will then yield five minutes to counsel for the interveners who will be prepared to address the breach of contract issues as well as the issues that they have briefed. And then I will attempt to by trying the case as if it were the district court's role to decide whether, in its view, the storage and handling of coal at the OBOT terminal would present a substantial danger to health and safety. But this is a breach of contract action and that is not what the contract provided for, which is an issue that this court decides de novo. The parties entered the development agreement, which is a regulatory agreement with a special status that must be approved by the City Council. And that agreement granted to the City Council. Who wrote the agreement, the development agreement? The agreement, there's no evidence in the record as to any negotiation over the agreement. It's a standard provision in development agreements. And the evidence in the record is that the parties have agreed that it should not be construed against either party as the drafter. The agreement granted to the City Council the authority to determine whether there was a substantial danger. The agreement also required that the determination be made following a public hearing at which evidence would be presented. And the agreement mandated that the determination would need to be supported by substantial evidence. Substantial evidence, the term used in the development agreement, is a term of art under California law. The contract selects California law as its governing principle. And California Code, Civil Code 1644 provides that when the parties to a contract use a term that has a special meaning, the court must understand the contract to incorporate that special meaning. Fortunately, the California Supreme Court has explained to us what the meaning of that term substantial evidence is. In states like the Western, in cases like the Western States Petroleum Association decision from 1995 from the California Supreme Court. And those decisions direct that when a court is reviewing whether a fact finder's decision is supported by substantial evidence, the court operates like an appellate court reviewing a trial court decision. Because of that, no extrinsic evidence should be presented, even to critique the evidence that was before the fact finder. The determination must be supported by solid and credible evidence such that a reasonable fact finder could conclude the same way that the fact finder concluded. And the court, in deciding whether substantial evidence supports the fact finder's determination, does not resolve disputes and does not weigh evidence that was before the fact finder. So even if the evidence before the fact finder could support either decision, so long as a reasonable fact finder could have decided the way the council did here, it should be upheld. Ms. Leighton, in effect, you're saying that substantial evidence is used in the contract invokes a term of administrative law. Yes, Your Honor. And that the trial court should not determine whether the evidence was substantial or not by its own weighing, but simply consider whether there was an evidence which was substantial as we would do in the normal administrative review. Exactly, Your Honor. Why didn't the City Council put that language in the contract? Your Honor, our position is that the City Council did put that language in the contract. You could use the term substantial evidence as used in administrative law in the state of California. Your Honor, that was unnecessary because of the California legal principle that when a term of art is used... And what was the case that you cited that said substantial evidence when used in a contract means substantial evidence under administrative law? Your Honor, the interveners have cited two federal court cases that address federal contracts that use the term substantial evidence. But this is a matter of California law, is it not? Your Honor, you are correct. And there is not a case that either side has been able to locate where the parties used the term substantial evidence. So you want us to find, as an original matter, that that was the expressed intent of the parties? Your Honor, it should not present a difficult question under California law because of the principle that when a term of art is used, that term should be understood with its specialized meaning. Why do you say substantial evidence is the term of law in this contract? When a term is used that is a term of art. Why do you say it's a term of art? Is it identified as a term of art by the language? It may not be identified as a term of art. I don't think there can be any dispute there. There are tens of California cases that we've cited that use the term substantial evidence and explain what that term means. And so that term has a specialized meaning under California law. There's no there's no reason the parties did not contract for there to be any different understanding of that term. In addition, I'd like to point out that the term that we're discussing here of the development agreement gave the decision to the City Council. It provided that if the City Council determines that a substantial danger is presented, and it provided that that determination needed to be made after a public hearing at which the evidence would be presented. So Oakland should prevail here even if this court does not import all of the legal principles of administrative law because this was a decision that was conferred to the City Council under the standard of substantial evidence, which is understood to have a certain meaning under California law following a public hearing. Can't the term substantial evidence be construed to mean burden of proof? That is, it's not beyond a reasonable doubt. It's not preponderance of evidence, but substantial evidence. So it's a, you know, relatively low bar. Isn't that one way to read that term in the contract? That is part of what is included in the term of substantial evidence. But substantial evidence, the standard explains that when a court is examining whether a fact-finder had substantial evidence before it, the way that a court looks at that is it before the fact-finder. It is as if the court is reviewing an arbitrator's decision, the court would not admit additional evidence to consider whether the arbitrator made a reasonable determination when the City Council could not possibly have considered any evidence that was not before it. Here, OBOT could have bargained for a different contract provision that gave the decision to a different fact-finder that provided for a different evidentiary standard that provided for a different process, but OBOT contracted to give this decision to the City Council and then decided to sit out the process that the City Council undertook as provided for in the development agreement and instead to present all of its evidence in a federal district court rather than before the fact-finder. On that point, OBOT points out that the ESA expert report was issued and then the hearing was held one day after. So, I mean, as a practical matter, could OBOT have actually put things in the record, given they just had one day to review a very large and complex expert report? Yes, Your Honor, because OBOT makes the same mistake that the district court made by focusing almost exclusively on the ESA report. This was a 10-month long process. There were reports issued by SSR, by Dr. Deb Niemeyer, by Fox that were issued months and months before the hearing, the final hearing that took place here. In addition, the Public Health Advisory Panel, which included extensive evidence, including the only evidence that was before the City Council as to the impact on air concentration levels, was issued weeks before the City Council hearing. Even the ESA report, which was issued three days before the final hearing, and most of what the ESA report did was to summarize evidence that was already in the record. Even at that point, OBOT could have requested additional time. That is a routine request in planning and land-use decision matters that are before the City Council and is routinely granted, but OBOT did not request additional time. OBOT did not seek to present additional evidence when the ordinance had its second hearing two weeks later. So OBOT, and there's no finding in the record, the district court did not make any finding that OBOT lacked an adequate opportunity to present its views. What happened was OBOT initially submitted a very bare-bones expert, a very bare-bones report that it had commissioned very early on in the process. That report was then critiqued by experts that had issued their reports to the City Council, and then at that point, the City Council decided that it would be challenging this legally, that there were legal restrictions on what the City Council could do. Even if this court did not give the deference that is required under the Substantial Evidence Standard, there was tremendous evidence in the record to support the Council's determination. There were five expert reports, including from the former director of the California EPA Air Pollution Epidemiology Section, from leading academics on air quality and public health issues, that established that there were hundreds of witnesses and thousands of pages of evidence presented at four public hearings. The evidence showed that hundreds of tons of coal dust emissions containing heavy metals would be released by this use of the OBOT terminal. That included particulate matter that is so small that it cannot be seen by the human eye, 20 times less than the width of a human hair, particulate matter 2.5, which the briefs refer to as PM 2.5, that is dangerous in any amount. The 21 tons of PM 2.5 emissions are double the California law. That's a threshold that California law identifies as causing significant adverse impact on air quality. And the only air concentration estimates that were in the record before the Council established that just the passing coal trains themselves, not even including the emissions that would be caused by the staging that took place at the OBOT terminal, would drive Oakland pollution above the national ambient air quality standards, above the annual standards, just from those passing trains. We know that coal dust and PM 2.5 in particular lead to cardiovascular disease, adverse birth outcomes, respiratory disease, emergency room visits, and cancer. And I'd like to turn this over to my colleague from the Intervenors. Good morning, Colin O'Brien on behalf of Intervenors Sierra Club and San Francisco Baykeeper. I'd like to start by talking a little bit more about breach of contract, and then turn briefly to intervention. So first, I want to answer a question that you asked, Judge Bea, and that was, how do we know that substantial evidence is a legal term of art? And I would point you to the Western States Petroleum Association case, California Supreme Court decision, 9 Cal 4th at 570. The California Supreme Court says very clearly that the words substantial evidence have an established legal meaning. So California law is clear that it's not legal, it's not specific. So what is that? Well, the Western States Petroleum case explains that the term has dual meanings that depend on the context. So in the first instance, when a fact-finder is making its decision, substantial evidence means evidence that's reasonable in nature, credible, and of solid value. This is the definition that you mentioned, Judge Lee. But the Western States decision goes on to say that the same term, substantial evidence, means something different when you move away from the fact-finder and it's a court reviewing the fact-finder's decision. And in that context, substantial evidence is a deferential-based standard of review that disallows extra record evidence. So the California authority from the Supreme Court, which is binding on this court under the Ninth Circuit's Paulson decision, tells you exactly what substantial evidence means. But I also want to highlight some principles from that Western States Petroleum decision that I think should reinforce your willingness to find that the review in this case by the district court needed to be deferential and confined to the record. Was the Western States case, was that a breach of contract or a mandamus or something else? It was a mandamus case. It was reviewing a determination of an agency pursuant to the California Department of Labor. It was also a declaratory case in addition to mandamus, wasn't it? It was also a declaratory case in addition to mandamus. I believe that's correct. And I will highlight that the underlying statute at issue in that Western States Petroleum case told the court that it should uphold the agency's decision unless it wasn't supported by substantial evidence. So that case wasn't construing the term substantial evidence review. It was asking what does a reviewing court do when the underlying agency or decision is one that has to be based on substantial evidence? So if I could just quickly hit some important principles that come from that Western States decision. The first is that the Western States decision emphasizes that review is deferential under substantial evidence because of constitutional separation of powers and courts should be reluctant to review legislative acts. And that's important here because not only was the development agreement itself a legislative act, it had to be adopted by the full city council, but the ordinance itself was obviously a legislative act as well. So the second principle that comes from Western States is that courts should be reluctant to create duplicative fact-finding scenarios because not only does this waste the resources of the parties and the courts, but it also undermines finality in decision-making. And the salience here is that the position that in writing the contract, the city of Oakland can decide what is substantial evidence and what is not substantial evidence, does that make the contract illusory? No. The contract itself in the language of 3.4.2 says that the city shall determine whether there's a substantial danger based on substantial evidence. So section 3.4.2 of the development agreement itself prescribes the role of fact-finder to the city. And that's the point I'm trying to make, which is this principle of non-duplicative fact-finding suggests that the city of Oakland would have never negotiated a contract that gave it the preeminent fact-finding role in the first instance if the contract was intended to allow this court to meet or the trial court to conduct its own proceedings de novo and basically throw everything that the city of Oakland did out the window. The last principle I'll note comes from the idea that this case is taking place in a police power context. The authority to regulate dangers to health and safety comes from the sovereign authority of the city, and so we believe that the development agreement should be interpreted in a way that preserves that police power. I note that I'm almost out of time, so I just want to say quickly on intervention. The interveners were not adequately represented by the city. It was evident at the first stage of the litigation that the city's interests differed from ours. Not only do they have broader economic interests, but they are contractual partners, business partners, with OBOT, with millions of dollars at stake. That colored their willingness to make arguments undermining the development agreement. We, after the district court suggested arguments that the city would not make, opted to make those arguments, but then ironically, having been denied full intervention, the court cited the denial of intervention as the reason why we couldn't make the argument, and that's exactly why intervention of right is supposed to be granted, so that new independent arguments that serve the interests of interveners can be made. Thank you. Thank you very much. May it please the court, Robert Feldman on behalf of Plaintiff and District Court. I'll try to say it at a speed that I can follow. The first thing I'd like to do is address the substantial evidence point. There are actually two points there. One is what sources was the district court entitled and obligated to look at, and two, what was the quality and quantity that the district court was entitled to look at. I actually think the first point is the more important and, in effect, the more disputed point. This was a bench trial, and the court said before this bench trial that the purpose of the trial is, quote, helping me better understand the evidence and the significance of the evidence that was before the city council. That's at excerpt of record 330. And based on the presentation you just heard and the briefs you've read, you might think that that was objected to. In fact, the next pleading from the city and the interveners jointly said, limited extra record evidence may be admitted to shed light and explain the record evidence. That's at excerpt of record 256. That's a correct statement of the law. That's exactly what... But that doesn't mean that the extra record evidence can swallow the entire proceeding. Completely correct, Your Honor. That's exactly correct. But that's what happened, it looks like. It did not at all. Judge Chabria was very, very well aware of the limits of the evidence that was before the city council. He said that the extra record evidence is less central, but relevant to the extent they assist the court in its assessment of the record before the city council. He further said at excerpt of record 14 that the extra record evidence is relevant to the court's ruling to a limited extent because it sheds light on the whole thing, but what the court then ultimately writes in his opinion is another. And this court was very clear to never, ever take a thing that the city said and say that it was found by the evidence adduced by us to be incorrect. He pointed out the flaws in their reasoning and in their logic and in their analysis. Mr. Feldman, would you please meet the argument made by Ms. Leighton that the contract itself instituted as the first venue where the issue of a substantial evidence would be determined? Yes. Not the United States District Court of California, but the city council of Oakland. Of course not. So if you agreed that the city council could determine whether there was substantial evidence or whether there wasn't substantial evidence, why aren't you bound by that agreement and why doesn't administrative law apply to the analysis of substantial evidence? There are several reasons. All right. The first, though, if I might be permitted to respond to Judge Pearsall's last comment, Your Honor, and then address yours. May I? Yeah. In the Western States case, Your Honor, which is the case that everybody seems to be pointing to, the court held that with approval, as the California Supreme Court held in an administrative mandamus case reviewing quasi-legislative rulemaking, that it approved of federal cases holding that extra record evidence could be admitted for background information for determining whether the agency considered all relevant factors or fully explicated its course of conduct. And that very language was repeated with approval by the defendants in this case at excerpt of Record 256. Well, let me read. I have the case in front of me. The evidence in question existed before in italics. The agency made its decision and, number two, it was not possible in the exercise of reasonable diligence to present this evidence to the agency before, and that's in italics again, the decision was made so that it could be considered and included in the administrative record. And, of course, the fact is that your experts could have been presented to Oakland before the decision was made. That's what the case is. The Western States case was a review of, in a mandamus case, not a contract case. Well, it was actually a declaratory and a mandamus. Yes, that's quite correct. The court, however, regarded it in the very first sentence as a review of a quasi-legislative rulemaking pursuant to mandamus, not a contract case. And in that case, the court specifically found that, at the very end of the opinion, the language that I just read, none of what the court said in that case applies in a contract case in which private parties purported to set out the standard. Of course, you call this one a contract case, but this one really amounts to a declaratory action to try and get the ordinance declared to be invalid. Not at all. This ordinance was not declared to be invalid. That's incorrect. In this case, Judge Chabria did not declare the ordinance to be invalid. What he declared was that the ordinance could not be applied to our clients because they had a vested right, and the vested right in Section 3.4.2 could only be impaired upon a finding of substantial danger. And to answer Judge Beah's question, I would say this. Your Honor may wish to look at Section 14.14 of the Development Agreement. Section 14.14 of the Development Agreement, and this is responsive in part, Your Honor, Judge Pearsall, to your question. Section 14.14 of the Development Agreement specifically says that certain actions are reviewable, and that certain actions are reviewable pursuant only to 1094.5, the mandamus statute, in Alameda Superior Court. And there was never an argument in this case, and believe me, it was presented to the district court, that is to say Section 14.14. There was never an argument that Section 14.14, an administrative mandamus pursuant to 1094.5, or ordinary mandamus pursuant to 1085. There was never an argument that those sections applied. This was a contract case, and what the substantial evidence review set forth, excuse me, what the substantial evidence language in 3.4.2 set forth was the quantum and quality of evidence that was required. Just as had been suggested earlier, it could have said clear and convincing evidence. This notion of prisms of evidentiary burdens that I'm sure the Court is familiar with from the Celotex Trilogy and Anderson v. Liberty Lobby, any one of those could have been chosen. What was chosen here was a standard that Judge Chabria recognized expressly was deferential, and everybody in this case agreed that what it required, and this is, I'm now referring to, if I may have a moment, the city's brief at 31 before your honors, and the intervener's brief at 20 before your honors. And Judge Chabria, at excerpt of record 11, specifically said that this is the test, evidence of ponderable legal significance that a reasonable mind might accept to support a conclusion, reasonable in nature, credible and of solid value. That is what all parties have agreed is the test. That is the test that Judge Chabria adopted. And he specifically said that he did not think it required a perfect evidentiary record, far from it. He specifically said that even if he was convinced the city was wrong, he would have to uphold the application of the ordinance, despite the vested right, if the evidence was reasonable and credible. I don't think you've answered my question. I will right now. Didn't you contract to have the determination of what constitutes substantial evidence to be determined by the city council? Absolutely. Well? Absolutely. And they did or didn't do it. And we brought a contract action because they didn't. And Judge Chabria said they didn't, using the standards that I've just articulated. What you say is you didn't contract to have their decision reviewed only as a matter of administrative law. There isn't a shred of doubt about that. Because, among other things, in Section 1414, that was expressly agreed upon. And Section 1414 did not include any statement that breach would only be reviewable pursuant to administrative law. And Section 3.4.2 did not include any reference to the mandamus statutes. And the fact that the mandamus statutes were referred to in one section of the contract and not in another requires that to be found. Excuse me. The thing that bothers me about this whole proceedings is there were public hearings on June 17, 2014, September 21, 2015, May 16, 2016, June 27, 2016. And there were lots of people that testified. Aside from the experts for the city, there were also other experts that testified. And your client put in the basis of design, which wasn't expert testimony. And you waited until the trial to put it in. And I've tried a lot of administrative proceeding cases. And usually the other side puts their evidence in so that the city commission could consider it. Instead, you sat in the weeds and then came at the trial. With all due respect, that's 100 percent incorrect. Let me correct the record. May I? Oh, please. There are two general responses to that. Number one, the record is replete, including findings by Judge Shabria, with the fact that my client said that this entire process was premature, that the terminal was only 8 to 10 percent designed, and that this was way premature. That's number one. One example of that is that the Oakland Fire Department told my clients to go away until their terminal was designed. I don't think that fire evidence is any good anyway, so don't worry about that. No, but it proves the point that the terminal was not designed enough to even be evaluated. That was one thing that we said. Well, it was designed enough for your experts to come in and pick at it once they went to trial. No, not at all. What the experts in our trial referred to was the inadequacies in the analyses of the terminal. They did not say the way the terminal would operate. That never happened. So that's number one, with all due respect. But I understand what you're saying. You think we sandbagged. Yeah, that's right. Okay. Well, that's exactly right. You think that we sandbagged. That's right. Okay. Well, I would direct the Court's attention to Excerpt of Record 1274, which was a letter sent in the specific time that I think it was Judge Lee referred to, after all this stuff was dumped on us on the eve of the hearing, in which we said that the hearing would be a due process violation and asked the city to postpone. We asked the city to postpone on May 16th. Actually, that's not true. We asked the city to postpone from the beginning. But in particular and specifically, in letters written on May 16th and on June 27th, we asked the city to postpone. We said that the hearing would be a violation of due process because, among other things, this ESA report was dumped on us with malice aforethought and specific calculation in a way that would not permit us to respond. That's two years after the first public hearing. And at the hearing, we had four minutes to speak, and our representative noted how unfair it was. That's two years after the first public hearing. You could have put in anything after that. The first public hearing was June 17th of 2014. The first public hearing in June of 2014, there was not even a terminal design at that point. What that tells you is that the city had made up its mind in June of 2014. But that was a resolution that had... That's the reason you didn't put in the evidence at any point then? That resolution that Your Honor is referring to, the resolution that said no fossil fuel through Oakland, had nothing to do with our clients. We were not a party to that. We were not invited to that. We had nothing to do with that. This process began in September of 2015. We submitted the basis of design, which Judge Shabria found was 8 to 10 percent of what the terminal would be. And from then on, we specifically said, specifically said, this is premature, we're not ready, you cannot analyze this. And in fact, Your Honor, the ESA report that was submitted on the eve of the... said, I can find the statement if you prefer, said, you'll hold me to this to some degree, I hope, said, this is a preliminary review based on limited information. That's true. Okay, well, so this was... I don't want to use French here. But this was not a fair process. It was never intended to be a fair process. And the idea that we sandbagged is 100 percent incorrect. It looks like it, though. Well, I don't have anything more that I can say other than that we said it was premature, we said it was a due process violation, and we asked them to wait. Otherwise, maybe we did. If we assume that the city is correct and the substantial evidence review standard applies, then we would review the district court's findings de novo, not clear error. Can OBOT prevail under that substantial evidence review standard? I haven't analyzed the record from that perspective. The district court did not proceed as... And I don't know, by the way, under Erie whether it could have. There's two issues with the application of the substantial evidence standard of review, at least two, setting aside whether it was contracted for. The first is that private parties cannot tell a district court, or with respect, this court, how to go about doing its business. They can't tell the district court what evidence it can and cannot look at. That's, among others, the York-Harris-Keough-Serra case. This contract could not have said, for example, you may not consider hearsay, or you may not consider too many witnesses. So that's one problem with it. The second problem with it is that even if it had clearly... Even if 1414 of the DA included the word breach, which it does not, or 3.4.2 included the phrase 1094.5 or mandamus, which it does not, even if that were the case, I don't know that Your Honors could expect a district judge to follow that. If it's procedural, certainly he couldn't, and if it's substantive, I actually don't know how that would come out under Erie. But thankfully, we don't need to address that, because Keough-Serra would prevent it, and certainly it's not what happened here. I'll say one word, if I may, about intervention. I'm familiar with the Preet case, which was decided by one of the distinguished judges on this panel, on behalf of himself, Judge Fischer and Judge Gould, that makes clear that intervention, as of right, is no joke. That's number one. And number two, there was nothing in this case that the Sierra Club was prevented from doing. They filed every motion they wanted, they participated in every deposition they wanted, they participated actively in trial, they participated actively in this appeal, and the only thing that they can point to is this argument that they made at the very end of the proceeding about whether 3.4.2 violates the police power. That's an interesting argument that Judge Chabria said would best be left to the State Court to figure out, and it was beyond this. Well, that's an excellent point, Your Honor. They could have sued and probably had to sue in State Court when this development agreement was adopted by the City Council as an ordinance. I was about to say that no matter what else one looks at, there's a statute of limitations that governs, and you'll not be surprised to know that it's very short. It's 90 days. And it's in the government code. So this last-minute effort to invalidate a contract, which exceeded the scope of the permissive, specifically exceeded the scope of the permissive intervention that Judge Chabria granted, is certainly not a basis to show prejudice, because the claim would have been barred had they brought it any later than 90 days, and they could have brought it, assuming it wasn't barred, at any point, including today. I have one second left. But shouldn't they have been able to bring that as an affirmative defense, because that would be within their limited... Well, they didn't. They did not. I know. And they did not sue, either, which they could have, any time after 2013, when the development agreement was adopted as an ordinance in full light of day. I'm happy to answer any more of your questions, Judge Griswold. Thank you very much, Mr. Fellman. You're welcome, Your Honor. Rebuttal. You've got 4 minutes and 20 seconds. Thank you, Your Honor. I'd like to start by addressing the point raised that the district court statement about the substantial evidence standard. The district court did correctly state the standard when it came to the quantum and quality of evidence that would be required. But that is not what the district court actually did when it was reviewing the evidence. The district court admitted 3 days of expert testimony and testimony by others over the objections of the city and of interveners. And that testimony was not limited to explaining or understanding the record that was before the city council. We've explained why, under the principle of substantial evidence, no extrinsic evidence should have been admitted. But the Western States Petroleum Association decision and this Court's decision in San Luis v. Jewel, which we've cited in our briefs, explain the reasons for that rule. And the reason is that when expert and outside evidence is admitted, it invariably becomes a battle of the experts, where the Court is substituting its own judgment for the role of the fact finder. That's why extrinsic evidence is generally not permitted under substantial evidence review. And that's exactly what took place in this case. In this case, the district court didn't only consider the evidence to shed light on the city council record, but actually weighed testimony presented by experts on issues that were never even argued to the city council and decided which expert the district court agreed with on issues like whether the emissions rates would be, it was fair to assume that those rates would be constant over time, on issues like threshold friction velocity, on issues of whether coal car covers were practicable and should have been considered. So the district court erred in numerous respects on that. I'd also like to respond to a question that was raised by Judge Bea about whether our interpretation of substantial evidence review would render the contract illusory. And it would not have, because substantial evidence review still requires a determination that the fact finder could have made the reasonable determination that it did. So it's a reasonableness standard. It is quite deferential, but it does not render the contract illusory because there has to be a public hearing. The decision has to be based on evidence such that a reasonable fact finder could have concluded that a substantial danger was present. I'd also like to address the questions raised by Judge Pearsall about what the district court exactly did. Before the district court, both the ordinance and the resolution were at issue. The ordinance was a legislative act by the city council, and the resolution was essentially an adjudicatory act. The resolution applied the ordinance to OBOT, and so that was what the district court essentially invalidated. My colleague on the other side raised the issue of the contract provision 14.14. That provision is different from the provision that we're looking at here, in that it selected the forum where a challenge would have to take place. It selected Alameda Superior Court. So if that provision had been invoked, this case never could have been in federal court. It also selected the causes of action and the remedies that could be pursued. And so no contract claim could have been pursued under that, and no damages could have been obtained. And so that contract provision served a completely different role from the provision at issue here, 3.4.2, which prescribed the process by which the city council would need to determine that a substantial danger was present, and the evidentiary standard that would have to apply. I would also like to address the arguments that the basis of design was not completed, and so this whole process was essentially junk because they couldn't have made the determination. OBOT did present an expert report at the very beginning of this many, many months process from HDR. That report presumed that all of the best mitigation measures could have been in place. When the expert reports submitted on the other side, and this was an adversary process, where the developer had every right to present additional evidence, they looked at other mitigation measures. They looked at the best measures that OBOT could have used to control emissions, and it was based on assuming the best that they still determined that this would present a substantial danger. And I'd also like to point out that the record that was cited by OBOT, the letter that was cited as having complained about the absence of due process, did not request an extension of time in order to be able to present additional evidence. Finally, I would just like to say that if this court were to affirm the district court, it would be rewarding OBOT's decision to withhold its evidence from the city council, and instead to present all of the evidence in its favor before the district court. It would deprive the city of the process that it bargained for when the parties negotiated and agreed to the development agreement, and it would deprive the city council of the reservation of its police powers that it reserved in the development agreement, section 3.4.2. Thank you very much, Ms. Layton. Thank you. And thanks to all the council for their presentation. Very interesting presentation, very interesting case. The case of OBOT v. City of Oakland is submitted for decision, and we will stand in recess until tomorrow morning at 9 a.m.
judges: Bea, Lee, Piersol